IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Lillie M. Middlebrooks, | ) |
| Plaintiff, | ) |
| v. | ) 1:10cv653 (JCC) |
| St. Coletta of Greater Washington, Inc., | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff Lille M. Middlebrooks's ("Plaintiff") Motion for Leave to File First Amended Complaint [Dkt. 15.] (the "Motion for Leave") required under Federal Rule of Civil Procedure 15(a)(2). For the following reasons, the Court will deny Plaintiff's Motion for Leave.

**I. Background**

A. Background

According to her Complaint, Plaintiff was employed by defendant St. Coletta of Greater Washington, Inc. ("Defendant"), from March 9, 2009, to June 25, 2009. (Compl. ¶ 10.) Beginning on May 1, 2009, Plaintiff participated in medical and dental benefits plans Defendant offered to its employees through insurance policies with third-party insurers, namely a CareFirst

1

Blue Choice HMO and a MetLife dental program (collectively, the "Plans"). (Compl. ¶¶ 19-20.) Defendant terminated Plaintiff's employment on June 25, 2009. (Compl. ¶ 29.)

On or about July 2, 2010, Plaintiff received a notice (the "Election Notice"), which is dated June 30, 2010, regarding continuation coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161-69. (Amend. Compl. ¶¶ 48-49.) The Election Notice states that Plaintiff is eligible to receive COBRA continuation coverage from July 1, 2009, to December 31, 2010, and also states that Plaintiff's COBRA premium would be $300.31 per month. (Amend. Compl. ¶¶ 51, 55.) A document accompanying the Election Notice, entitled "Cobra Premium Subsidy Notification," states that Plaintiff "may be eligible to have 65% of [her] COBRA premium paid on [her] behalf if [she] should elect COBRA coverage." [Dkt. 17, Ex. 1 at 6.] The document also provided an illustrative calculation, the explanation for which stated that Plaintiff "need only pay 35 percent of the COBRA premium." *Id.* (emphasis removed).

B. Procedural Background

On June 11, 2010, Plaintiff filed a six-count complaint (the "Complaint") with this Court, alleging various violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*, and COBRA. [Dkt. 1.] On July 14, 2010, Defendant filed both a Motion to Dismiss and an

Answer with this Court. [Dkt. 4, 7.] Defendant's Motion to Dismiss seeks an Order dismissing certain counts of Plaintiff's Complaint. (MTD at 1 [Dkt. 4].) On August 19, 2010, Plaintiff filed her Motion for Leave with this Court, attaching her Proposed First Amended Complaint (the "Amended Complaint") as an attachment to that Motion. [Dkt. 15.] Defendant filed an Opposition to Plaintiff's Motion for Leave on August 30, 2010. [Dkt. 15.]

Plaintiff's Amended Complaint seeks to add two counts to her Complaint: Count VII, entitled "Failure to Provide COBRA Election Notice to Include an Offer of Eighteen Months of COBRA Coverage in Violation of 29 U.S.C. § 1166(a)(4), 29 U.S.C. § 1132(c)(1)(A), and 29 U.S.C. § 1132(c)(1)(B)," and Count VIII, entitled "Failure to Provide COBRA Election Notice to Include a COBRA Premium Price Reduced by 65% Subsidy in Violation of § 1166(a)(4), 29 U.S.C. § 1132(c)(1)(A), and 29 U.S.C. § 1132(c)(1)(B)." (Amend. Compl. ¶¶ 114, 121.) Plaintiff's Motion for Leave to amend her Complaint to add these two counts is currently before the Court.

## II. Standard of Review

A party may amend a pleading once as a matter of course if the party does so either (i) within 21 days after serving the pleading to be amended or (ii) within 21 days after service of a responsive pleading or after the service of a motion under Rule

12(b), whichever is earlier. Fed. R. Civ. P. 15(a)(1). When the Rule 15(a)(1) time period expires, the proposed amendment falls under Rule 15(a)(2), which requires either leave of court or written consent of the opposing party to amend a pleading. Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that a court "should freely give leave when justice so requires." *Id*.

In the Fourth Circuit, a motion for leave to amend pursuant to Rule 15(a)(2) can be denied only where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Steinberg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). In determining whether a proposed amendment is futile, a court may consider whether the proposed amendments could withstand a motion to dismiss. *Perkins v. United States*, 55. F.3d 910, 917 (4th Cir. 1995) (affirming denial of plaintiff's motion for leave to amend her complaint as futile because "the proposed amendments could not withstand a motion to dismiss."); 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1487, at 743 n.28 (2010). Thus, a court may test the sufficient of the proposed amendments by applying the standard of review applicable in a Rule 12(b)(6) motion to dismiss.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. A court must take "the material allegations of the complaint" as admitted and liberally construe the complaint in favor of a plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.* at 1965. In its recent decision, *Ashcroft v. Iqbal*, 129 S. Ct 1937 (2009), the Supreme Court expanded upon *Twombly* by articulating a two-pronged analytical approach to be followed in any Rule 12(b)(6) analysis. First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. *Id.* at 1951. "[B]are assertions" that

amount to nothing more than a "formulaic recitation of the elements" do not suffice.  *Id.* (citations omitted).  Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 1950-51.  The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1949.  In other words, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III.  Analysis

The issue before the Court is whether either or both of the new claims Plaintiff proposes in Counts VII and VIII of her Amended Complaint could withstand a motion to dismiss.  The Court will address each proposed count in turn.

A.  Proposed Count VII

The question before the Court is whether the Election Notice received by the Plaintiff violated ERISA's requirement that a plan administrator notify any qualified beneficiary of his or her right to receive up to eighteen months of COBRA continuation coverage after a qualifying event.  ERISA section 606(a)(4) requires that a plan administrator send notice to any

qualified beneficiary of his or her rights to elect COBRA continuation coverage after the occurrence of a "qualifying event." 29 U.S.C. § 1166(a)(4). According to 29 U.S.C. § 1166(a), the contents of such a notice are determined in "accordance with regulations prescribed by the Secretary [of Labor[1]]." The Department of Labor regulations accompanying ERISA section 606(a)(4) provide that the election notice must contain, among other things, an explanation that each qualified beneficiary has a right to elect continuation coverage, an explanation "of the maximum period for which continuation coverage will be available under the plan, if elected," and "an explanation of the continuation coverage termination date." 29 C.F.R. § 2590.606-4(b)(4)(iv), (viii). ERISA section 602(2) provides that for plan participants who have experienced a qualifying event due to termination, COBRA continuation coverage "must extend for at least the period beginning on the date of the qualifying event and ending not earlier than" the maximum required period of "[eighteen] months after the date of the qualifying event." 29 U.S.C. § 1162(2); *see also Geissal v. Moore Med. Corp.*, 524 U.S. 74, 80 (1998) ("If a qualified beneficiary makes a COBRA election, continuation coverage dates from the qualifying event, and when the event is termination or reduced hours, the maximum period of coverage is generally 18 months.").

---

[1] The term "Secretary" is defined in ERISA to mean the "Secretary of Labor." 29 U.S.C. § 1002(13).

In the instant case, Plaintiff's proposed Count VII alleges that Defendant "failed to provide the Plaintiff with a COBRA election notice to reflect an offer of eighteen months of COBRA continuation coverage." (Amend. Compl. ¶ 114.). The Plaintiff acknowledges receiving the Election Notice, acknowledges it stated Plaintiff could elect to receive continuation coverage, and acknowledges it stated Plaintiff was entitled to receive COBRA continuation coverage from July 1, 2009, to December 31, 2010. (Amend. Compl. ¶¶ 49-51.) The time period set forth in the Election Notice, July 1, 2009, to December 31, 2010, is a period of eighteen months, beginning on the first day after Plaintiff's coverage under the Plans ended due to her termination. [Dkt. 17, Ex. 1 at 1.]

The Election Notice provides in substance the very disclosures Plaintiff's proposed Count VII alleges it does not. Therefore, Plaintiff's proposed Count VII fails to state a claim upon which this Court could grant relief, making it a futile claim for which this Court denies leave to amend.

B.  Proposed Count VIII

The question before the Court is whether the Election Notice received by the Plaintiff satisfies the requirement in the American Recovery and Reinvestment Act of 2009, as amended ("ARRA"), that ERISA section 606(4) notices provided to individuals eligible to receive ARRA's COBRA premium subsidy

8

include disclosure of the ARRA subsidy. During the period in which Plaintiff was terminated by Defendant, ARRA provided a 65% subsidy for the cost of COBRA premiums for up to 15 months to individuals subject to COBRA "qualifying event." American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (Feb. 17, 2009), § 3001(a), as amended by: Department of Defense Appropriations Act of Fiscal Year 2010, Pub. L. No. 111-118 (Dec. 19, 2009), § 1010; Temporary Extension Act, Pub. L. No. 111-144 (Mar. 2, 2010), § 3; and Continuing Extension Act of 2010, Pub. L. No. 111-157 (Apr. 15, 2010), § 3(a). Under ARRA, employers are required to notify eligible individuals of the subsidy by providing, among other things, a prominent description of the availability of the premium reduction. *Id.* at § 3001(a)(7). The notice requirement can be satisfied by "inclusion of a separate document with the notice [required by ERISA]." *Id.* at § 3001(a)(7)(A)(iii).

In the instant case, Plaintiff's proposed Count VIII alleges that Defendant "failed to provide the Plaintiff with a COBRA election notice to reflect the Plaintiff's COBRA premium price reduced by the 65% subsidy established under the American Recovery and Reinvestment Act of 2009." (Amend. Compl. ¶ 121.) Nowhere does ARRA require, however, that the Election Notice show Plaintiff's COBRA premium reduced by the ARRA subsidy. ARRA requires only, with respect to the subsidy, that the

administrator disclose the existence of the 65% subsidy. The "Cobra Premium Subsidy Notification," accompanying the Election Notice, clearly states that Plaintiff "may be eligible to have 65% of [her] COBRA premium paid on [her] behalf if [she] should elect COBRA coverage."[2] [Dkt. 17, Ex. 1 at 6.] Moreover, the document also provided an illustrative calculation, the explanation for which stated that Plaintiff "need only pay 35 percent of the COBRA premium." *Id.* (emphasis removed).

The Election Notice provides in substance the disclosures ARRA requires. The requirement Plaintiff's proposed Count VIII alleges, namely that the COBRA premium price stated in the Election Notice be reduced by the ARRA subsidy, is not required by ARRA's terms. Therefore, Plaintiff's proposed Count VIII fails to state a claim upon which this Court could grant relief, making it a futile claim for which this Court denies leave to amend.

---

[2] Because the Court is evaluating whether each of Plaintiff's proposed counts would survive a motion to dismiss, the Court may consider authentic documents which are integral to Plaintiff's proposed amendments. *See Clark v. BASF Corp.*, 142 F. App'x. 659, 661 (4th Cir. 2005) ("When the plaintiff fails to introduce a pertinent document as part of her pleading, a significant number of cases from throughout the federal court system make it clear that the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case.") (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (3d ed. 2004)).

## IV. Conclusion

For the reasons stated above, the Court will deny Plaintiff's Motion for Leave to File First Amended Complaint.

|  | /s/ |
|---|---|
| September 1, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |